# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| James R. Todd, | ) | |
|---|---|---|
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No: 14 C 50072 |
| | ) | |
| Kess Roberson, | ) | |
| | ) | |
| *Respondent*. | ) | Judge Frederick J. Kapala |

## ORDER

Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] is denied. Certificate of appealability will not issue. This case is closed.

## STATEMENT

Petitioner, James R. Todd, is currently in the custody of the Illinois Department of Corrections, housed at the Lincoln Correctional Center, where respondent, Kess Roberson, is the warden. Before the court is Todd's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his confinement. For the reasons that follow, the petition is denied.

### I. BACKGROUND

The State charged petitioner in two separate cases (Whiteside County, Illinois Case Nos. 07 CF 140 & 188) with two unlawful deliveries of controlled substances in violation of 720 ILCS 570/401(a)(2)(A). In a June 21, 2007 letter from the Whiteside County State's Attorney, Gary L. Spencer, to petitioner's counsel, Daniel E. Radakovich, the State offered petitioner an 18-year sentence. Radakovich responded by requesting that Spencer consider a sentence of 10 years in Case No. 07 CF 188 and the dismissal of Case No. 07 CF 140. Spencer wrote Radakovich again and offered to dismiss Case No. 07 CF 140 if petitioner agreed to plead guilty in Case No. 07 CF 188 with either a negotiated 15-year sentence or an open plea. Spencer reiterated his offer in a fax to Radakovich and further indicated that "[w]hile a judge may well give [petitioner] less than 15 years at a sentencing, given that [petitioner] has 5 priors and given that it was $1,000 worth of drugs, I would not be doing my job (as I see it) to offer less than 15 years."

On February 22, 2008, Radakovich faxed Spencer a letter indicating that attorney Thomas Murray would appear in his stead for the plea hearing on February 25 because Radakovich had to attend two emergency depositions in Chicago on that date. Radakovich also requested that sentencing be deferred to a future date. Radakovich indicated that it was his understanding that the State would dismiss the charges in Case No. 07 CF 140 and would recommend that petitioner be

admitted to bond in Case No. 07 CF 188.  On the same date, Spencer faxed a letter back to Radakovich providing that it was Spencer's understanding that on February 25, 2008, petitioner would enter an open plea in Case No. 07 CF 188, the State would dismiss the charge in Case No. 07 CF 140, and would agree to a reduction in petitioner's bond with various conditions including that petitioner make daily contact with a law enforcement agent.

On February 25, 2008, petitioner appeared with Murray before the Honorable Stanley B. Steines.  Spencer appeared on behalf of the State.  The Court stated, "[t]he parties have indicated to the Court off the record that they have a limited plea agreement for the Court's consideration.  Mr. Spencer, if you'd state the terms of that agreement please."  Spencer responded:

> Your honor, it's my understanding that [petitioner] will enter an Open Plea of Guilty to the one count charged in 07 CF 188.  That case charges the Class X Delivery of a Controlled Substance. . . .  Pursuant to his plea in 07 CF 188, the People would be moving to dismiss 07 CF 140.
>
> In addition, your honor, the parties would be recommending to the Court that bond in 07 CF 188 be reduced from the amount now set to the amount of $20,000.

Murray confirmed that Spencer's summary met with his understanding of the plea agreement.  During the Illinois Supreme Court Rule 402 admonishments, the Court informed petitioner that the possible penalties included a term of imprisonment of 6 to 60 years and petitioner indicated that he understood.  Petitioner also acknowledged that no one promised him anything other than the terms of the plea agreement, that is the dismissal of 07 CF 140 and the reduction of the bond in 07 CF 188.  The Court found that petitioner's plea of guilty was knowing and voluntary, found him guilty, and scheduled the case for a sentencing hearing.

The sentencing hearing was continued multiple times over the ensuing months.  On July 6, 2009, Radakovich wrote to Spencer inquiring whether the State would "be interested in a sentence lower than the ten (10) year sentence that has been negotiated in consideration for a higher fine in this matter?"  Spencer responded, "10 years?  Defendant plead guilty **open to an extendable class X, six to sixty.**"  Radakovich replied, "[w]hat is your position re: Sentencing, fine etc?"  Spencer answered, "given the fact that he has a previous class X conviction (if memory serves) means that my recommendation will be for a significant number of years."  Radakovich emailed Spencer on November 17, 2009, and again asked whether the State would be interested in negotiating an agreed sentence and fine.  Spencer responded, "I remain convinced that he is a major problem for our community and is continuing to deal drugs prolifically.  My original offer was 18 and I still think that is about right."

On February 24, 2010, Radakovich moved to withdraw as petitioner's counsel because he anticipated that he would be required to testify as to an issue that "has now apparently arisen as to whether an expressed-or implied- agreement or understanding was arrived at by and between State's Attorney Spencer and Attorney Radakovich" relating to "a 'cap' (i.e. maximum) of ten years in the Illinois Department of Corrections."  Radakovich was permitted to withdraw.  New counsel entered his appearance and filed a motion to enforce plea agreement maintaining that prior to his February 25, 2008 plea he was informed by Radakovich that the State's Attorney had agreed that petitioner's cooperation would result in a sentence of no more than 10 years.

2

A hearing on petitioner's motion to enforce plea agreement was held before the Honorable John L. Hauptman. Radakovich testified that during a telephone conversation with Spencer on February 21, 2008, "[i]t was [his] recollection that [he Radakovich] proposed that . . . [petitioner's] sentence would be, although not firmly decided or agreed upon, that it would be capped at ten years." Radakovich explained that he understood that depending on the level of satisfaction derived from the information petitioner would continue to give to law enforcement, petitioner could get less than 10 years but no more. Radakovich testified that it was his understanding that Spencer was in agreement with the 10-year cap. Radakovich said that Spencer also agreed to reduce petitioner's bond and he made arrangements for Murray to cover the February 25, 2008 plea hearing because Radakovich was not available on that date. Radakovich also testified that when he explained the plea agreement to petitioner, he outlined the agreement as he understood it including the 10-year sentencing cap. Radakovich acknowledged that the letters that he and Spencer exchanged on February 22, 2008 did not mention the 10-year cap. Radakovich explained that he was deliberately vague about the agreement to preserve the safety of his client and everyone involved in the investigations and because Murray was copied on the letter and he did not want to professionally compromise Murray in the event that Murray ended up representing an individual about which petitioner provided information. Radakovich testified further that there came a point in time when Spencer told him that law enforcement was not satisfied with petitioner's cooperation.

On cross-examination, Radakovich agreed that he is the one who uttered the words "10-year cap" during the conversation on February 21, 2008. Radakovich added, however, that Spencer did not object, take exception, or say no. Radakovich also explained that he had no intention of telling Murray about the 10-year cap and was purposely vague with Murray because he did not want Murray to know that petitioner was cooperating with law enforcement.

At the conclusion of Radakovich's testimony, petitioner rested and the State moved for a directed finding denying petitioner's motion to enforce plea agreement. The Court found that there was no reflection of any 10-year cap in the transcript of the February 25, 2008, plea hearing. Despite Radakovich's assertions that he made mention of a 10-year cap during his February 21, 2008, telephone conversation with Spencer, the Court found no evidence that Spencer agreed to such a term. The Court noted that Radakovich's February 22, 2008, letter memorializing the telephone conversation of the previous date did not reference a 10-year cap. The Court also found "disingenuous" Radakovich's explanation that he was being intentionally vague to keep Murray from being professionally compromised. The court concluded that there was never any agreement that the State would limit its sentencing recommendation to 10 years. The Court granted the State's motion for a directed finding and denied petitioner's motion to enforce the plea agreement.

The case proceeded to sentencing. Based on petitioner's extensive criminal history and conduct while on pre-sentencing release, the State recommended a 40-year sentence. Petitioner argued for a sentence within the 15 to 18 year range in accordance with the plea agreements the parties initially contemplated. The Court imposed a 25-year sentence.

Thereafter, petitioner filed a "motion to vacate directed finding in favor of State on motion to enforce plea agreement and for a new hearing and motion to reconsider sentence or vacate guilty plea." After rejecting petitioner's procedural argument that granting a directed finding was improper, the Court heard testimony in support of the balance of the motion.

3

Attorney Thomas Murray testified that Radakovich called him and asked him to cover petitioner's plea hearing. Radakovich told Murray that petitioner would be pleading guilty to a Class X felony in 07 CF 188, the plea would be open, the State would dismiss the charge in 07 CF 140, and petitioner's bond would be reduced so that he could be released in order to cooperate with law enforcement. Murray said he understood this to mean that petitioner's level of cooperation would effect the sentencing recommendation the State would ultimately make. Murray said that before the plea hearing he told the petitioner who he was, that he was there in Radakovich's stead, and that it was Murray's understanding that petitioner was going to be "pleading open" to a Class X felony in 07 CF 188. When asked, Murray confirmed that he used the exact words "pleading open." When asked what pleading guilty open meant to him, Murray said, "[t]hat he would be pleading guilty and there would, without knowing what the recommendation of the State for a sentence would be." Murray said petitioner had no questions. Murray also explained to petitioner that it was his understanding that the charge in 07 CF 140 would be dismissed, petitioner's bond would be reduced, that the sentencing would be postponed, and petitioner would be expected to cooperate with law enforcement. Murray testified further that when Judge Steines said "[t]he parties have indicated to the Court off the record that they have a limited plea agreement for the Court's consideration," he meant that prior to going on the record he, Spencer, and petitioner stood before the bench and informally told Judge Steines what they planned to do that day. Murray made clear that everything they told Judge Steines off the record wound up on the record during the plea hearing.

Petitioner testified that he did not know that Murray was going to represent him at the plea hearing until he got to court. When petitioner spoke to Radakovich the day before the plea, Radakovich did not tell petitioner that he would not be present. According to petitioner, Radakovich did tell him that he and Spencer worked out a plea negotiation providing for a 10-year sentencing cap and a bond reduction so that he could assist law enforcement. On the day of the plea hearing, petitioner came into the courtroom and Spencer and Murray were already talking to Judge Steines. When the hearing began, Judge Steines mentioned that the parties told him off the record that they had reached a "limited plea agreement." Petitioner did not know what a limited plea agreement was but he thought that it meant there was a limit on his sentence. When Judge Steines asked him if anyone promised him anything in exchange for his plea of guilty other than the terms announced in court, petitioner said no because he thought the 10-year sentencing cap was contemplated by the term "limited plea agreement."

The Court denied all relief crediting Murray's testimony that there was no sentencing cap contemplated in the plea agreement, noting that the only evidence that there ever was such an agreement came from petitioner, and characterizing that notion as "a fantasy." Accordingly, the Court denied the motion to withdraw the plea of guilty because there was no ineffective assistance of counsel and concluding that there was "no basis whatsoever . . . to support a finding that [petitioner] did not make a knowing and voluntary plea." The Court also denied the motion in as much as it sought a reconsideration of the sentence.

On direct appeal, petitioner argued that (1) he received ineffective assistance of trial and substitute counsel in connection with his guilty plea because trial counsel led him to believe there was a 10-year sentencing cap and substitute counsel was not aware of the cap, (2) his guilty plea was not knowing and voluntary because he relied upon counsel's statement that there was a negotiated

4

10-year sentencing cap, (3) he was denied the benefit of the bargain he made with the State with respect to the 10-year sentencing cap, and (4) his due process rights were violated when the trial court denied his motion to vacate the directed finding on his motion to enforce plea agreement. The Illinois Appellate Court rejected each argument and affirmed. People v. Todd, 2012 IL App (3d) 110624-U. The Appellate Court reasoned that counsel was not ineffective because the trial court's finding based on its credibility determinations that the 10-year sentencing cap did not exist was not manifestly erroneous and, therefore, petitioner did not demonstrate prejudice as a result of any error by counsel. Id. at ¶¶ 15-16. This same finding precluded petitioner's third appellate contention because the 10-year sentencing cap was not part of any bargain. Id. at ¶ 21. With respect to petitioner's second appellate contention, the Appellate Court held that the trial court did not abuse its discretion in refusing to allow defendant to withdraw his guilty plea because petitioner specifically indicated that he was not relying on anything other than what was stated in open court. Id. at ¶ 28. Finally, the Appellate court found no procedural problem with granting the State's motion for a directed finding on petitioner's motion. Id. at ¶ 23. The Illinois Supreme Court denied petitioner leave to appeal on January 30, 2013. People v. Todd, No. 115049, 982 N.E.2d 774 (Ill. 2013).

In the instant § 2254 petition, Todd argues that he was denied the effective assistance of counsel in that his attorney (1) failed to memorialize the 10-year cap to which he believed the State agreed, (2) induced him to plead guilty based upon the 10-year cap, and (3) had another attorney whom he believed had a conflict cover the plea hearing while deliberately not informing that attorney of the 10-year cap.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a federal court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA permits courts to issue a writ of habeas corpus only if the state court's determination of the petitioner's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000). A state court's factual determinations are presumed correct. 28 U.S.C. § 2254(e)(1). Therefore, merely asserting, or even showing, that the state court committed error is not enough to overturn factual findings. Ward v. Sternes, 334 F.3d 696, 703-04 (7th Cir. 2003). Instead, the petitioner must show, by clear and convincing evidence, that the state court made an unreasonable determination of the facts. 28 U.S.C. § 2254(e)(1). Such a decision would be "by definition, a decision so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable." Ward, 334 F.3d at 704 (quotation marks omitted).

Petitioner's first ground is procedurally defaulted because he did not present it to the State courts. See Gonzales v. Mize, 565 F.3d 373, 380 (7th Cir. 2009) ("Fair presentment contemplates that the operative facts and the controlling legal principles of the federal claim be submitted to the state court through one complete round of state-court review, either on direct appeal or in post-conviction proceedings."). "Procedural default may be excused, however, if the petitioner can

5

show both cause for and prejudice from the default, or show that . . . failure to consider the claim would result in a fundamental miscarriage of justice." Gray v. Hardy, 598 F.3d 324, 328 (7th Cir. 2010). In this case, petitioner has not established cause, prejudice, or that the failure to consider the claim would result in a fundamental miscarriage of justice.

The procedural default aside, in order to succeed on any of his three grounds for relief petitioner will have to show that the state courts' factual finding that the 10-year sentencing cap did not exist, and therefore was never communicated to petitioner, was an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1)-(2). Petitioner maintains that to the extent the trial court found that petitioner was never informed of a 10-year sentencing cap "this [was] clearly an unreasonable determination of the facts in light of the undisputed testimony from Radakovich and [petitioner]." However, the trial court was free to disbelieve the testimony of Radakovich and petitioner on bases other than contrary testimony such as the absence of the purported 10-year cap from the correspondence and that Spencer's last correspondence indicated that the State would recommend 18 years. Petitioner also calls the trial court's finding "logically fallacious," but does not explain how this court's hyper-deference to state court factual findings would permit such a conclusion.

The trial court found, and the Illinois Appellate Court affirmed, that Radakovich's testimony even if believed only established that he believed there was an agreed 10-year sentencing cap and not that the State actually agreed to this term. The trial court went on to find that no such agreement ever existed and petitioner's testimony that he pleaded guilty in reliance on this term was incredible, calling it "a fantasy." Petitioner has not established by clear and convincing evidence that these findings were unsupported by the record making them arbitrary and therefore objectively unreasonable. See Ward, 334 F.3d at 704. The trial court's finding that there never was an agreed 10-year sentencing cap and that petitioner did not rely on such an agreement in deciding to plead guilty is firmly supported by the record including Murray's testimony that no such agreement existed which the trial court found to be credible and thorough. The trial court also found Radakovich's testimony that he did not tell Murray about the 10-year sentencing cap because he wanted to preserve Murray's professional independence in future criminal cases made no sense and was disingenuous. Such a finding was amply supported by the record including the fact that, apart from the 10-year cap, the State's agreement to a bond reduction and the requirement that petitioner meet with a law enforcement agent while out on bond signaled the contemplated cooperation to Murray. The finding that no sentencing cap agreement existed was also supported by the reasonable assumption that had there been an agreed 10-year cap it would have been mentioned in the correspondence between Radakovich and Spencer and the idea that it was left out of this private correspondence to preserve the safety of those involved in the investigation is not logical. The firmest basis for the finding that there was no agreement for a 10-year sentencing cap upon which petitioner based his decision to plead guilty was petitioner's acknowledgment at the plea hearing that he was not relying on anything other that the terms of the plea agreement that were announced on the record which did not include a 10-year sentencing cap. The trial court's rejection of petitioner's after the fact self-serving explanation that he thought the term "limited plea agreement" meant that his sentence would be limited to 10 years is adequately supported by the record where the plea was repeatedly referred to as an "open plea" and where petitioner was specifically told that he was subject to a sentence of six to sixty years. This is especially true given the fact that petitioner had pleaded guilty to felony

6

charges in state court on at least four occasions prior to pleading guilty in this case. Thus, the findings of fact by the State courts have not been shown to be objectively unreasonable and as a result all three of petitioner's § 2254 grounds are foreclosed.

### III. CONCLUSION

Based on the foregoing analysis, petitioner's § 2254 petition is denied. Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A district court should only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation marks omitted). In this case, petitioner has not shown that reasonable jurists could debate whether the petition should have been resolved in a different manner. Therefore, a certificate of appealability will not issue.

Date: 10/6/2014

ENTER:

_____

FREDERICK J. KAPALA

District Judge